Windsor,
*February,*
1831.

## Spring and Kirk *vs.* Samuel Chipman.

Property was struck off at auction to B. as the highest bidder, but he was unable to comply with the conditions of sale, which required ready payment or approved security. The property was not again set up, but S. gave security at the amount of B.'s bid. This was done in the presence of B., but without his request, or understanding why it was done. S. took the property and kept it two days, when he let it to B., who kept and used it several months, and until it was attached at the suit of his creditors. S. paid and took up the security which he gave. *Held*, that no title passed to B. by his bid, and that S. was the purchaser. *Held* also, that while the transaction might excite suspicion of actual fraud between B. and S., the title of S. was not subject to be defeated, in favor of B.'s creditors, by constructive fraud.

This was trespass for a yoke of oxen, to which the defendant pleaded the general issue, accompanied with a notice, that the oxen were attached by him on legal process against one Bixby. The facts in evidence at the trial were these :—The oxen in question had been part of an estate in the neighborhood of the present parties, and at an auction sale of said estate by the administrator, were offered and cried for sale in the usual manner, with an express condition, that the bidder should either pay down the amount of his bid, or give a note for the same at ninety days, with approved security. Spring and Bixby attended the auction, and the oxen were struck off to Bixby as the highest bidder. He was unable, however, to pay his bid or furnish the requisite security, and this fact was made known to the administrator. Spring then executed to the administrator his own note, with approved security, for the oxen, at the price for which they had been struck off to Bixby. This was done in the presence of Bixby, but not at his request, nor did he know why it was done. Spring at the same time employed a son of Bixby to drive the oxen as far as Bixby's house, on the way towards Spring's house, and the next day Spring took them from Bixby's house to his own, and kept them there two days. He then let them to Bixby to work for their keeping, and they continued in Bixby's possession and use for several months, and until they were attached by the defendant at the suit of sundry creditors of Bixby. In the mean time Spring had sold one half of said oxen to Kirk, who owned the farm on which Bixby lived. The plaintiffs together paid the note which Spring gave to the administrator.

The jury were instructed upon these facts to find for the defendant. The plaintiffs filed exceptions to the charge, and the cause was passed to this court.

WINDSOR,
February,
1831.

Spring & Kirk
vs.
Chipman.

*Collamer, in support of the exceptions.*—There was no effectual sale of the oxen to Bixby, but the whole interest vested in Spring ; and the subsequent possession by Bixby, however it may tend to show actual trust or fraud between him and Spring, cannot be regarded as fraud *per se*, since Bixby has never owned the cattle.

*Argument for the defendant.*—1. In cases of fraudulent sales, it is the duty of the court not only to instruct the jury in the law, and also the facts they are to find, but particularly to point out what testimony will constitute the proper evidence of such facts.—1 Aik. Rep. 116.

2. The sale of the oxen was a public sale, and Bixby the bidder and purchaser. The oxen were struck off to him publicly, and he took possession of them pursuant to the purchase, and this possession and the use of the oxen continued down to the time of the attachment, with the exception of two days.

Here then was a sale of the oxen to Bixby, accompanied by all necessary requisites to give it legal validity.

If, therefore, Spring got any title to the oxen, as between him and Bixby, it was a covert sale which the creditors of Bixby were not bound to notice, as Bixby's purchase, use and occupancy of the oxen were public and notorious.

The giving the note by Spring cannot be considered in any other light than consummating Bixby's purchase of the oxen, for him and in his behalf.

If the contract made by Bixby for the oxen had not been consummated, then the oxen should have been put up by the auctioneer again, and Spring, if he chose to become the purchaser, could have bid them off. Such a course, without fraud, would have given the title to Spring. This course was not taken, and hence every bystander or person present had a right to consider that the oxen were the property of Bixby.

Again ; as the oxen were not put up again, but passed from the auctioneer on Bixby's bid, the only legitimate conclusion is, that Spring was Bixby's agent or surety in fulfilling *his* contract thus made. Such is the legal presumption, and hence this pretended after sale to Spring, if it existed in fact, yet is fraudulent in law and void as to the creditors.

For the transaction, as viewed by the plaintiffs, would give Bixby a false credit.

It would also impugn the principle, that the possession of personal chattels is evidence of ownership.

It would defeat, *in toto*, the salutary doctrine of *fraud in law*, and completely evade all the badges of a *secret trust*, which has always been a primary and fundamental principle in establishing this doctrine. For it would only be necessary, in order to evade this doctrine wholly, that some friend should be present, and by some secret contrivance purchase in the right of the debtor, and thereby defeat the right of creditors.

We refer the court, in support of our positions, to the several cases decided in this state by the supreme court, and particularly to the case of *Durkee* vs. *Mahoney*, 1 Aik. 116.—*Boardman* vs. *Keeler*, do. 158.—*Mott* vs. *McNeil*, do. 162. *Weeks* vs. *Wead*, 2 do. 64.

We contend, therefore, that the charge was correct, and that the verdict should not be disturbed.

The opinion of the court was delivered by

ROYCE, J.—The single question to be determined is, whether the facts proved conclude the plaintiffs in law; for the case was not put upon the purpose of the parties in point of fact.

It is a well known principle of our law, that possession must accompany and follow a sale of personal property, unless it be a sheriff's sale on execution. The doctrine was first applied to secret sales from a debtor to his creditor, without a change of possession; and on principles of policy, in favor of other creditors, such sales were held conclusively fraudulent and void as against them. It was dictated by the danger of deception and false credit, presumed to result from the continued possession and use of property, which the debtor was known to have previously owned. The same principle has since been extended to all private sales, as well as those between debtor and creditor. Nor has the period of the debtor's previous ownership been permitted to qualify the rule: whether for a longer or shorter time, it has induced the same legal consequences. This was strongly illustrated by the case of *Tobias* vs. *Francis*, 3 Vt. Rep. 425, which was treated as a case of sale and immediate re-sale, where the title of the debtor was but for a moment.

Such being the undoubted rule of law, we have only to inquire whether Bixby ever became the owner of the oxen in dispute; in other words, whether the title vested in him by his

WINDSOR,
February,
1831.

Spring & Kirk
vs.
Chipman.

bid, or passed directly from the administrator to the plaintiff, Spring. It must be admitted as an elementary principle, that the property in a chattel may sometimes pass by the contract of sale, before delivery or payment; when it is said the purchaser acquires a title to the thing, and the seller to the price. But this is never the case when inconsistent with the express stipulation or manifest intention of the parties. Hence, in case of a sale on terms of ready payment, either no property passes till payment be made, or non-payment operates, at the election of the seller, to extinguish all right of the vendee. The same may be said of a noncompliance with any terms of the contract, which are evidently designed to precede the effectual transfer of the property. The condition of sale in this instance was ready payment or approved security. Bixby was unable to furnish either, and this was made known to the administrator. The property might therefore be considered as discharged from the bid, and sold to any other person. And if a satisfactory price was offered, the sale might be effected without setting up the property a second time.

It is insisted, that from the circumstances of this case it must be inferred, that the security furnished by Spring was intended to enure for the benefit of Bixby. But the case finds that Bixby did not request it, nor understand why the security was thus given. This fact repels that presumption of an actual trust, which the transaction would otherwise appear to justify. It follows that Spring, and not Bixby, acquired a title to the property. The present, then, is a case of bailment to one who had never been the owner, and is not within any of the decisions upon sales adjudged fraudulent in law.

Judgment of county court reversed, and a new trial granted.